## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **MELISSA D. DEEL,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 2:17cv00048 |
| | ) | **REPORT AND** |
| **NANCY A. BERRYHILL,** | ) | **RECOMMENDATION** |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| Defendant | ) | By:   Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Melissa D. Deel, ("Deel"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 *et seq.* (West 2011 & 2018 Supp.). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). Neither party has requested oral argument. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Deel protectively filed her application for DIB on May 23, 2014, alleging disability as of July 6, 2013, based on residuals from neck surgery, anxiety, depression and attention deficit hyperactivity disorder, ("ADHD"). (Record, ("R."), at 19, 204-05, 223.) The claim was denied initially and upon reconsideration. (R. at 120-22, 126-28, 131-34, 136-38.) Deel then requested a hearing before an administrative law judge, ("ALJ"). (R. at 139-40.) The ALJ held a hearing on December 1, 2016, at which Deel was represented by counsel. (R. at 47-82.)

By decision dated January 27, 2017, the ALJ denied Deel's claim. (R. at 19-41.) The ALJ found that Deel met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2016. (R. at 21.) The ALJ found that Deel had not engaged in substantial gainful activity since July 6, 2013, the alleged onset date.[1] (R. at 21.) The ALJ found that, through the date last insured, the medical evidence established that Deel had severe impairments, namely cervical spine degenerative disc disease, status-post surgery; and lumbar spine degenerative changes, but he found that Deel did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21-24.) The ALJ found that, through the date last insured, Deel had the residual functional capacity

---

[1] Therefore, Deel must show that she was disabled between July 6, 2013, the alleged onset date, and December 31, 2016, the date last insured, in order to be eligible for benefits.

to perform light work[2] that required no more than frequent climbing of ramps and stairs and occasional climbing of ladders, ropes or scaffolds, kneeling, stooping, crouching and crawling. (R. at 24.) The ALJ found that, through the date last insured, Deel was unable to perform her past relevant work. (R. at 39.) Based on Deel's age, education, work history and residual functional capacity, and the testimony of a vocational expert, the ALJ found that, through the date last insured, a significant number of jobs existed in the national economy that Deel could perform, including jobs as a companion, a housekeeper and a laundry worker. (R. at 39-40) Thus, the ALJ concluded that, through the date last insured, Deel was not under a disability as defined by the Act, and was not eligible for DIB benefits. (R. at 41.) *See* 20 C.F.R. § 404.1520(g) (2018).

After the ALJ issued his decision, Deel pursued her administrative appeals, (R. at 272), but the Appeals Council denied her request for review. (R. at 1-5.) Deel then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2018). This case is before this court on Deel's motion for summary judgment filed June 20, 2018, and the Commissioner's motion for summary judgment filed July 9, 2018.

## II. Facts

Deel was born in 1980, (R. at 204), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). Deel has a high-school education and past work experience as a certified nursing assistant, ("CNA"), and as a personal care aide. (R. at 56-57, 224.) Deel testified that she experienced anxiety attacks nightly. (R. at 63.)

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2018).

Asheley Wells, a vocational expert, also was present and testified at Deel's hearing. (R. at 74-80.) Wells classified Deel's past work as a CNA and a personal care aide as medium[3] and semi-skilled. (R. at 75.) Wells was asked to consider a hypothetical individual of Deel's age, education and work history, who could perform light work that did not require more than frequent climbing of ramps and stairs and that did not require more than occasional climbing of ladders, ropes or scaffolds, stooping, kneeling, crouching and crawling. (R. at 75.) Wells testified that such an individual could not perform Deel's past work, but could perform other work existing in significant numbers in the national economy, including jobs as a companion position, a housekeeper and a laundry worker. (R. at 75-77.) Wells was next asked to consider the same individual, but who would be able to sit, stand and walk four hours in an eight-hour workday; who would be limited to simple, routine and repetitive tasks; who could have no more than occasional interaction with the public; who would be limited to making simple work-related decisions; and who would be absent from work one day a month. (R. at 77.) Wells testified that there would be no full-time positions available that such an individual could perform due to the sitting, standing and walking limitation. (R. at 77-78.) Next, Wells was asked to consider the individual described in the second hypothetical, but who would be limited to occasionally lifting and carrying items weighing 10 pounds; frequently lifting and carrying items weighing less than 10 pounds; sitting, standing and walking for two hours in an eight-hour workday; who could never climb ladders, ropes or scaffolds, balance, kneel, crouch or crawl; who could occasionally be exposed to unprotected heights and moving mechanical parts and vibration; who would be off task five percent of the time during an eight-hour

---

[3] Medium work involves lifting items weighing up to 50 pounds at a time and frequently lifting and carrying items weighing up to 25 pounds. If someone can do medium work, she also can do light and sedentary work. *See* 20 C.F.R. § 404.1567(c) (2018).

workday; and who would be absent from work two days a month. (R. at 79.) Wells testified that such an individual could not perform any work. (R. at 79-80.)

In rendering his decision, the ALJ reviewed records from Stephanie Fearer, Ph.D., a state agency psychologist; Dr. Richard Surrusco, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Dr. James Darden, M.D., a state agency physician; LeConte Medical Center; Haysi Clinic; Pikeville Medical Center; Buchanan General Hospital; Norton Community Hospital; Meadowview Ear, Nose & Throat Specialists; Dr. William J. Wallace, M.D.; Judy B. Millington, Ph.D., a licensed psychologist; Malena Mullins, NP-C, a nurse practitioner; Alysia Hoover-Thompson, Psy.D., a licensed clinical psychologist; Dr. Norman W. Mayer, M.D.; and Dr. Ronald S. Smith, M.D., a psychiatrist.

On July 6, 2013, Deel presented to the emergency room at LeConte Medical Center following a motor vehicle accident. (R. at 273-85.) X-rays of Deel's lumbar and thoracic spine were normal. (R. at 280.) X-rays of Deel's cervical spine showed lack of cervical lordosis. (R. at 280.) She was diagnosed with low back strain, tenderness in the thoracic spine and cervical strain. (R. at 276-77.)

The record shows that Malena Mullins, NP-C, a nurse practitioner at the Haysi Clinic, treated Deel from July 2013 through November 2016 for various complaints, including neck pain; low back pain; left ankle and foot pain; anxiety; and depression. (R. at 287-99, 517-19, 523-30, 541-47, 610-19, 621-36, 651-72, 711-18, 741-55, 777-80.) On July 26, 2013, Mullins saw Deel for complaints of neck and low back pain resulting from a motor vehicle accident. (R. at 290-91.) Deel had a normal gait; her cervical spine showed tenderness to palpation, but was otherwise stable without subluxation or laxity; her thoracic spine showed tenderness to palpation, but was otherwise normal; her lumbar spine was normal;

she had normal range of motion and joint stability of the upper and lower extremities; motor examination revealed normal muscle tone, bulk and strength; and she had appropriate judgment, good insight and proper orientation. (R. at 291.) Mullins diagnosed spinal stenosis of the lumbar region and backache, unspecified. (R. at 291.) On December 6, 2013, an MRI of Deel's cervical spine showed mild degenerative changes at the C5-C6 disc level with a moderate to large size disc herniation and mild diffuse bulging disc at the C6-C7 disc level. (R. at 300-01.) An MRI of Deel's lumbar spine was normal. (R. at 303.)

On January 28, 2014, Deel saw Dr. Norman W. Mayer, M.D., for complaints of neck pain. (R. at 307-11.) Dr. Mayer reported that Deel was alert and oriented, she had normal intellect and intact memory; she had no sensory loss or motor weakness; her balance, gait and coordination were intact; her fine motor skills were normal; and her deep tendon reflexes were preserved and symmetric. (R. at 309-10.) Dr. Mayer diagnosed cervicalgia, cervical disc displacement and cervical spinal stenosis, and he recommended an anterior cervical discectomy and fusion of the C5-C6 disc space. (R. at 310.) Dr. Mayer performed this procedure on March 21, 2014. (R. at 319-74, 380-434.) Dr. Mayer gave a postoperative diagnosis of herniated nucleus pulposus and cervical stenosis at the C5-C6 disc space with cervical radiculopathy. (R. at 433.) On April 22, 2014, Deel reported pain improvement. (R. at 502-05.) It was noted that Deel was not using any assistive device. (R. at 502.) Dr. Mayer reported that Deel's cervical radiculopathy had resolved and that her neck pain was "dramatically improved." (R. at 504.)

On June 4, 2014, Deel was seen by Alysia Hoover-Thompson, Psy.D., a licensed clinical psychologist at the Haysi Clinic, for depression and anxiety. (R. at 512-13.) Deel refused to take antidepressant medication due to potential for weight gain. (R. at 512.) Deel stated that she was unable to concentrate and had difficulty

juggling multiple tasks. (R. at 512.) Hoover-Thompson reported that Deel's mood was mildly depressed with congruent affect; and she had good insight and judgment. (R. at 512.) Hoover-Thompson diagnosed attention deficit disorder, ("ADD"), of childhood; and depressive disorder, not elsewhere classified. (R. at 513.) Hoover-Thompson did not place any restrictions on Deel's work-related abilities. On June 12, 2014, Deel reported neck pain, anxiety and nightmares. (R. at 517-19.) Mullins diagnosed depressive disorder, not elsewhere classified. (R. at 519.) During follow-up visits with Mullins throughout 2014, Deel complained of anxiety and was diagnosed with depressive disorder. (R. at 544, 618, 622, 625.)

On August 28, 2014, Stephanie Fearer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Deel was mildly restricted in her activities of daily living, had no difficulties in maintaining social functioning, experienced mild difficulties maintaining concentration, persistence or pace and had experienced no repeated episodes of extended-duration decompensation. (R. at 97-98.)

On August 28, 2014, Dr. Richard Surrusco, M.D., a state agency physician, completed a medical assessment, finding that Deel could perform light work. (R. at 99-100.) He found that Deel could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl and occasionally climb ladders, ropes and scaffolds. (R. at 99-100.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 100.)

On September 4, 2014, Deel saw Dr. Mayer for complaints of bilateral posterior neck pain with numbness and tingling to her hands. (R. at 558.) She also complained of pain in her legs and left foot. (R. at 558.) Deel stated that she had difficulty concentrating. (R. at 559.) Dr. Mayer reported that Deel had normal

orientation and memory, and her cranial nerves were grossly intact. (R. at 560.) X-rays of Deel's cervical spine showed anterior fusion of the C5-C6 disc space in anatomic alignment. (R. at 565.) Dr. Mayer diagnosed displacement of cervical intervertebral disc without myelopathy and lumbago. (R. at 560.) On September 18, 2014, Deel complained of left foot pain. (R. at 567-68.) Dr. Mayer reported that Deel had normal orientation and memory, and her cranial nerves were grossly intact. (R. at 569.) An MRI of Deel's lumbosacral spine showed no disc herniation, canal stenosis or areas of neuroforaminal narrowing. (R. at 552.) X-rays of Deel's cervical spine showed anterior fusion of the C5-C6 disc space in anatomic alignment. (R. at 554.) Dr. Mayer diagnosed spinal stenosis in the cervical region and lumbago. (R. at 569-70.)

On November 10, 2014, Dr. James Darden, M.D., a state agency physician, completed a medical assessment, finding that Deel could perform light work. (R. at 111-12.) He found that Deel could frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch and crawl; and she had an unlimited ability to balance. (R. at 111-12.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 112.)

On November 12, 2014, Joseph Leizer, Ph.D., a state agency psychologist, completed a PRTF, finding that Deel had no restrictions in her activities of daily living, had no difficulties in maintaining social functioning, experienced mild difficulties maintaining concentration, persistence or pace and had experienced no repeated episodes of extended-duration decompensation. (R. at 109-10.) Leizer noted that, while Deel had some mild symptoms of depression, she did not have a severe mental impairment. (R. at 110.)

On December 24, 2014, Deel presented to the emergency room at Buchanan General Hospital for complaints of fever, cough and earache. (R. at 580-91.) She denied feeling down, depressed or hopeless. (R. at 583.) A chest x-ray showed acute bronchopneumonia. (R. at 590.)

On January 20, 2015, Dr. William J. Wallace, M.D., reported that Deel had effective communication skills, and she was pleasant and appropriate. (R. at 596-97.) Dr. Wallace diagnosed tinnitus. (R. at 597.)

On February 2, 2015, Mullins saw Deel for her complaints of worsening depression and anxiety. (R. at 627-28.) Deel was referred to a psychiatrist. (R. at 628.) Deel continued to complain of anxiety, depression and nightmares at her follow-up visits in March, April, May, June and July 2015. (R. at 629-36, 651-57.) On July 31, 2015, Deel complained of left foot, knee and hand pain, neck pain and anxiety. (R. at 658-60.) X-rays of Deels' left foot were normal. (R. at 681.) Beginning in August 2015, Deel reported that her medication helped her pain. (R. at 661, 664, 670, 748.) In November 2015, Deel reported that her symptoms of depression and anxiety improved with medication. (R. at 670.) However, in May 2016, Deel reported that she was unable to take her antidepressant medication due to side effects. (R. at 748.)

On March 31, 2015, Judy B. Millington, Ph.D., a licensed psychologist, began treating Deel for her complaints of anxiety. (R. at 599-604.) Deel stated that she started experiencing panic attacks following her motor vehicle accident in July 2013. (R. at 599.) She stated that she felt better during the daytime while taking Wellbutrin, but her nightmares were worse. (R. at 600.) Millington reported that Deel was neatly and appropriately dressed; she was alert and oriented; she was cooperative; her motor behavior was average; her speech was clear, relevant,

spontaneous and normal in volume and pace; her mood was anxious; her affect was appropriate; her thoughts were orderly; she had intact immediate recall; she was able to recall three out of four items; she had average judgment and insight; concentration tasks were difficult for her; and it took her three attempts to understand the instructions to perform Serial 7s. (R. at 601.) Millington diagnosed generalized anxiety disorder and major depressive disorder, single episode, moderate. (R. at 604.)

That same day, Millington completed a mental assessment, indicating that Deel had no limitation on her ability to maintain personal appearance. (R. at 606-08.) She opined that Deel had mild limitations on her ability to relate to co-workers; to use judgment; to interact with supervisors; to understand, remember and carry out simple job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 606-07.) Millington found that Deel had a satisfactory ability to follow work rules; to deal with the public; and to function independently. (R. at 606.) She opined that Deel had a seriously limited ability to deal with work stresses; to maintain attention and concentration; and to understand, remember and carry out detailed job instructions. (R. at 606-07.) Millington found that Deel had a seriously limited to no useful ability to understand, remember and carry out complex job instructions. (R. at 607.) She found that Deel would miss two days of work a month. (R. at 608.)

On August 18, 2015, Dr. Ronald S. Smith, M.D., a psychiatrist, reported that Deel had an anxious and depressed mood; intact sensorium and memory; linear thought process; and normal judgment. (R. at 705.) Dr. Smith diagnosed major depressive disorder, recurrent; generalized anxiety disorder with panic; ADHD;

and chronic pain. (R. at 705.) Dr. Smith assessed Deel's then-current Global Assessment of Functioning, ("GAF"),[4] score at 60.[5] (R. at 705.)

On September 21, 2015, Millington saw Deel for complaints of anxiety. (R. at 638-45.) Millington diagnosed generalized anxiety disorder; ADHD, predominately inattentive presentation; and major depressive disorder, single episode, moderate. (R. at 645.) That same day, Millington completed a mental assessment, indicating that Deel had slight limitation in her ability to relate to co-workers; to deal with the public; to use judgment; to maintain personal appearance; to relate predictably in social situations; and to demonstrate reliability. (R. 647-49.) She found that Deel had a satisfactory ability to follow work rules; to interact with supervisors; to function independently; to understand, remember and carry out simple job instructions; and to behave in an emotionally stable manner. (R. at 647-48.) Millington found that Deel had a serious limitation in her ability to deal with work stresses; to maintain attention and concentration; and to understand, remember and carry out detailed job instructions. (R. at 648.) She opined that Deel had no useful ability to understand, remember and carry out complex job instructions. (R. at 648.) She opined that Deel would be absent from work more than two days a month. (R. at 649.)

On September 21, 2015, Dr. Smith reported that Deel had an appropriate affect; anxious mood; intact sensorium and memory; normal thought content; linear thought process; and normal judgment. (R. at 703.) Deel reported that her

---

[4] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[5] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

medication was helping her symptoms of depression. (R. at 703.) Dr. Smith diagnosed major depressive disorder, recurrent; generalized anxiety disorder with panic; ADHD; chronic pain; and insomnia. (R. at 703.) Dr. Smith assessed Deel's then-current GAF score at 60. (R. at 703.) On October 22, 2015, Deel reported that she was not having panic or anxiety. (R. at 701.) She reported that she was more depressed and that her ability to function was limited. (R. at 701.) Dr. Smith diagnosed major depressive disorder, recurrent; generalized anxiety disorder with panic; ADHD; chronic pain; and insomnia. (R. at 701.) On November 19, 2015, it was noted that Deel was functioning adequately. (R. at 700.) Dr. Smith diagnosed major depressive disorder, recurrent; generalized anxiety disorder with panic; and ADHD. (R. at 701.) On December 13, 2015, Dr. Smith diagnosed major depressive disorder, recurrent; generalized anxiety disorder with panic; and ADHD. (R. at 698.) On December 17, 2015, Deel reported that her medication helped her symptoms of depression. (R. at 738.) Dr. Smith reported that Deel was goal directed and had intact insight, memory and orientation. (R. at 738.)

On January 14, 2016, Deel reported that medication helped with her symptoms of depression. (R. at 737.) Dr. Smith reported that Deel's speech was clear; she was goal directed; and she had intact insight, memory and orientation. (R. at 737.) On February 11, 2016, Dr. Smith diagnosed major depressive disorder, recurrent; generalized anxiety disorder with panic; and ADHD. (R. at 736.)

On March 26, 2016, Deel was admitted to Norton Community Hospital for hypotension. (R. at 720-26.) She was discharged the following day with a diagnosis of acute gastroenteritis; presyncope; systemic inflammatory response syndrome; ADHD; chronic neck pain; hypokalemia; and dehydration. (R. at 720.)

On November 4, 2016, Millington reported that Deel's motor behavior was notable for some shifting around in her seat; her speech was clear, relevant, spontaneous and normal in volume and pace; her mood was anxious; she had an appropriate affect; her thoughts were orderly; her judgment and insight appeared average; her attention appeared socially appropriate until asked to repeat back, then problematic; her immediate recall was three out of four; her delayed recent recall with distraction was one out of four; and her impulses were appropriately controlled. (R. at 759.) Millington diagnosed generalized anxiety disorder; ADHD, predominately inattentive presentation; and major depressive disorder, single, episode, moderate. (R. at 767.)

That same day, Millington completed a mental assessment, indicating that Deel had no limitation in her ability to "socially" interact with supervisors. (R. at 769-71.) She found that Deel had slight limitations in her ability to relate to co-workers; to use judgment; to maintain personal appearance; to behave in an emotionally stable manner; and to demonstrate reliability. (R. 769-70.) Millington found that Deel had a satisfactory ability to deal with the public; to deal with work stresses; to function independently; and to understand, remember and carry out simple job instructions. (R. at 769-70.) She opined that Deel had a satisfactory to seriously limited ability to relate predictably in social situations. (R. at 770.) Millington found that Deel was seriously limited in her ability to follow work rules; to interact with supervisors (with problems remembering and focusing); and to maintain attention and concentration. (R. at 769.) She opined that Deel had no useful ability to understand, remember and carry out complex and detailed job instructions. (R. at 770.) She opined that Deel would be absent from work two days a month. (R. at 771.)

On November 10, 2016, Mullins completed a medical assessment, indicating that Deel could occasionally lift and carry items weighing 15 pounds and frequently lift and carry items weighing five to seven pounds; stand and/or walk a total of two to three hours in an eight-hour workday and could do so for up to 20 minutes without interruption; she could sit up to two hours in an eight-hour workday and could do so for up to 30 minutes without interruption; occasionally stoop; never climb, kneel, balance, crouch and crawl; and her ability to feel, to push, to pull and to work around heights, moving machinery and vibration was limited. (R. at 773-75.) Mullins stated that Deel would be absent from work more than two days a month. (R. at 775.)

Mullins's treatment notes reflect that she repeatedly reported that Deel had a normal gait; her cervical spine showed tenderness to palpation, but was otherwise stable without subluxation or laxity; her thoracic spine showed tenderness to palpation, but was otherwise normal; her lumbar spine was normal; she had normal range of motion and joint stability of the upper and lower extremities; motor examination revealed normal muscle tone, bulk and strength; she had appropriate judgment, good insight and proper orientation; and her recent and remote memory was intact. (R. at 288, 293, 296, 299, 518, 542, 544, 616, 618, 622, 625, 628, 630, 633, 636, 652, 656, 659-60, 662-63, 665-66, 671-72, 712-13, 717, 743, 746, 750, 754, 779.)

On November 29, 2016, Deel reported to Millington that she was trying to manage her ADHD without medications, but she was having problems with memory and concentration. (R. at 782.) Millington reported that Deel's mood was anxious and dysphoric. (R. at 782.) Millington diagnosed generalized anxiety disorder; ADHD, predominantly inattentive presentation; and major depressive disorder, single episode, moderate. (R. at 783.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2018). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2018).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2011 & 2018 Supp.); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether

substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Deel argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6.) Deel also argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Brief at 6-7.)

Deel argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 5-6.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a) (2018). Basic work-related mental activities include understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R.  § 404.1522(b). Although the Social Security regulations do not define the term "significant," this court previously has held that it must give the word its commonly accepted meanings, among which are, "having a meaning" and "deserving to be considered." *Townsend v. Heckler*, 581 F. Supp. 157, 159 (W.D. Va. 1983).  In *Townsend*, the court also noted that the antonym of "significant" is "meaningless."  581 F. Supp. at 159.

In evaluating the severity of mental impairments, the ALJ must first determine the degree of functional loss in four areas considered essential to the

ability to work: (1) understanding, remembering or applying information; (2) interacting with others; (3) the ability to concentrate, persist or maintain pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3) (2018). These areas are rated on the following five-point scale: none, mild, moderate, marked and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *See* 20 C.F.R. § 404.1520a(c)(4). If a claimant's degree of limitation in all of these areas is rated as "none" or "mild," the Commissioner generally will find that the claimant's impairment is not "severe" unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. *See* 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ found that Deel had "mild" limitations in all four areas. (R. at 22-23.)

The ALJ explained that the area of understanding, remembering and applying information refers to an individual's ability to learn, recall and use information to perform work activities. (R. at 22.) This category considers a claimant's ability to understand and learn terms, instructions and procedures, to follow one- to two-step oral instructions, to recognize a mistake and correct it, to identify and solve problems, to sequence multi-step activities and to use reason and judgment to make work-related decisions. (R. at 22.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.1 (2018).

The ALJ noted that, although the record documented isolated occurrences of memory deficits and an occasion on which Deel seemed to have trouble understanding the instructions of a cognitive test, (R. at 22, 601), her recent and remote memory were otherwise intact during medical examinations, (R. at 22, 293, 309, 524, 703, 705), and she had a grossly normal intellect during a neurological evaluation. (R. at 22, 309.) The ALJ additionally noted that Deel exhibited

average, appropriate, normal or good judgment. (R. at 23, 291, 293, 512, 524, 601, 630, 703, 705, 779.) The ALJ, therefore, found that Deel was only mildly limited with regard to understanding, remembering and applying information.

The ALJ explained that the area of interacting with others refers to a claimant's capacity to relate to and work with supervisors, co-workers and the public. (R. at 23.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.2. Examples of interacting with others include, cooperating with others, asking for help when needed, handling conflicts, stating own point of view, initiating or sustaining conversation, understanding and responding to social cues, responding to requests, suggestions, criticism, correction or challenges and keeping social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.2. The ALJ noted that, although Deel sometimes presented as sad or anxious amid considerable situational stressors, such as her husband losing his job and later being diagnosed with leukemia, (R. at 23, 640, 760), she was otherwise pleasant and cooperative and exhibited effective communication skills, including normal speech. (R. at 23, 524, 596, 640, 724, 759.) The ALJ found that Deel was only mildly limited in the category of interacting with others.

The ALJ explained that the area of ability to concentrate, persist or maintain pace concerns actions that demonstrate the ability to focus attention on work activities and stay on task at a sustained rate. (R. at 23.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.3. Examples include initiating and performing a work task, working at an appropriate and consistent pace, completing tasks in a timely manner, ignoring distractions, changing activities without being disruptive, working close to or with others without interrupting or distracting them and sustaining an ordinary routine and regular attendance at work, as well as the ability

to work a full day without needing more than the allotted number or length of rest periods customarily provided. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.3. The ALJ noted Deel's testimony that she had problems in this area, (R. at 23, 65), and that one treating provider interpreted Deel's difficulty on a cognitive test as evidence of poor concentration. (R. at 23, 601, 759.) However, he also noted that Deel was able to drive for two hours, which demonstrates substantial abilities to concentrate and persist. (R. at 23, 600.) The ALJ additionally noted that Deel was consistent with making and keeping her medical appointments, and she reported good relief of her ADHD symptoms when taking the medication Vyvanse. (R. at 23, 702, 737.) Therefore, the ALJ found that Deel was only mildly limited in her ability to concentrate, persist or maintain pace. (R. at 23.)

The ALJ explained that the area of adapting or managing oneself deals with a claimant's ability to regulate emotions, control behaviors and maintain well-being in a work setting. (R. at 23.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.4. This includes the ability to respond to demands, adapt to changes, manage psychologically based symptoms, distinguish between acceptable and unacceptable work performance, set realistic goals, make plans independently of others, maintain personal appearance and attire and to be aware of normal hazards and to take precautions. (R. at 23.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.4. The ALJ noted that, although Deel sometimes presented as sad or anxious amid considerable situational stressors, she was appropriately attired at her medical appointments, (R. at 23, 596, 601, 737, 759), and she consistently exhibited good or average insight. (R. at 23, 291, 293, 512, 524, 601, 630, 779.) Thus, the ALJ found that Deel was only mildly limited in her ability to adapt or manage herself. (R. at 23.)

The ALJ further explained that he gave "little weight" to Millington's opinions because they were inconsistent with the other substantial evidence in the record. (R. at 38.) Prior to November 4, 2016, Millington opined that Deel had a satisfactory ability to perform all work-related mental abilities, except the ability to deal with work stresses, to maintain attention and concentration and to understand, remember and carry out detailed and complex job instructions. (R. at 606-07, 647-48.) On November 4, 2016, Millington also stated that Deel's ability to follow work rules and to interact with supervisors were seriously limited. (R. at 770.) Despite these limitations, Millington opined that Deel had only a slight limitation in her ability to use judgment and to relate to co-workers and a satisfactory ability to understand, remember and carry out simple job instructions and to deal with work stresses. (R. at 769-70.) The ALJ noted that other treatment providers, including Deel's longstanding primary care provider, Mullins, documented that Deel had appropriate judgment, good insight and intact memory. (R. at 38, 291, 293, 309, 512, 524, 703, 705, 779.) Millington's treatment notes similarly documented that Deel was neatly dressed, alert, oriented and cooperative, with orderly thoughts, clear speech, and average judgment and insight. (R. at 38, 601, 759.) Also, the record indicates that Deel has suffered from attention problems since childhood, which did not prevent her from working prior to her 2013 accident. Furthermore, Deel testified that she did not require any inpatient psychiatric treatment and, during office visits, she acknowledged a good response to medications. (R. at 38, 62-63, 670, 703, 737-38.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

Deel argues that her treatment history with psychologist Millington warranted a finding of a severe mental impairment. (Plaintiff's Brief at 5-6.) The fact that a claimant received treatment is not sufficient to show a "severe

impairment. *See Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 789 (3d Cir. 2003) (stating "the fact that he was on medication simply indicate[s] that he did have some depression, but do[es] not conflict with the ALJ's finding[] that the depression was not severe"). Based on the above, I find that substantial evidence exists to support the ALJ's finding that Deel did not suffer from a severe mental impairment.

The ALJ noted that he was giving Mullins's physical assessment "little weight" because it was inconsistent with the other evidence of record, as well as her own treatment notes. (R. at 38.) *See* 20 C.F.R. § 404.1527(c)(4) (empowering an ALJ to give only minimal weight to opinions that are either internally inconsistent or inconsistent with the other evidence of record). The ALJ noted that, in contrast to Mullins's opinion that Deel would be incapable of meeting the demands of even sedentary work, her treatment notes documented that Deel's gait was normal, her spine was stable throughout, and she had normal muscle tone, bulk and strength. (R. at 38, 611, 616, 630, 633, 636, 712-13, 743, 746, 750, 754.) An MRI of Deel's lumbar spine showed no disc herniation, canal stenosis or areas of neuroforaminal narrowing. (R. at 552.) X-rays of Deel's cervical spine showed anterior fusion of the C5-C6 disc space in anatomic alignment. (R. at 554.) The ALJ noted that, apart from referring Deel for an occasional diagnostic workup, Mullins did not recommend progressively more aggressive interventions. (R. at 38.) In addition, Deel reported that her neck pain dramatically improved subsequent to surgery, (R. at 502, 504), and she repeatedly reported that her pain was controlled with medication. (R. at 661, 664, 670, 748.) The state agency physicians opined that Deel could perform light work that did not require more than frequent climbing of ramps and stairs and only occasional climbing of ladders, ropes and scaffolds. (R. at 99-100, 111-12.) The more recent state agency physician's opinion also indicates that Deel could occasionally stoop, kneel,

crouch and crawl. (R. at 111-12.) Based on this, I find that the ALJ properly weighed the evidence and that substantial evidence exists to support the ALJ's finding with regard to Deel's physical residual functional capacity.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's finding that Deel did not suffer from a severe mental impairment;
2. Substantial evidence exists in the record to support the ALJ's finding with regard to Deel's physical residual functional capacity; and
3. Substantial evidence exists in the record to support the Commissioner's finding that Deel was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Deel's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2018):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written

objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time at this time.

DATED:    January 31, 2019.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE